# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| On Time Staffing, LLC, | **DOCUMENT FILED ELECTRONICALLY** |
| Plaintiff, | Civil Action No.: 09-4158 (FSH) |
| v. | |
| Coast to Coast Installations, Inc., | **Petition Returnable: September 8, 2009** |
| Defendant. | |

## AFFIDAVIT IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

COUNTY OF PHILADELPHIA     :
             : SS
COMMONWEALTH OF PENNSYLVANIA :

Jay E. Kagan, upon his oath, deposes and says the following:

1. I am a partner with the law firm of Dilworth Paxson LLP and represent the Plaintiff, On Time Staffing LLC, in this matter.

2. I have personal knowledge of all the facts contained herein.

3. An Arbitration Award in this case was issued on August 12, 2009 by Arbitrator Harry T. Mondoil. An exact copy of this Award is attached to this Affidavit as Exhibit A.

4. This Arbitration involved the following parties: On Time Staffing LLC and Coast to Coast Installations, Inc. These parties signed and agreed to this Arbitration as evidenced by an Arbitration Agreement attached as Exhibit B to this Affidavit.

`Exhibit 1`

5.      The Arbitration Award was obtained pursuant to the agreement of the parties, the rules of the arbitration organization, and the law.

_____
Jay E. Kagan, Esquire

**SWORN TO AND SUBSCRIBED**

before me this 14th day of August, 2009

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBORAH E. FARRIS, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 5, 2013

820305_1

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

In the Matter of the Arbitration between

Re: 14 103 Y 00010 09
     On Time Staffing, LLC
     and
     Coast to Coast Installations, Inc.

**INTERIM AWARD OF ARBITRATOR**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated April 4, 2007, and having been duly sworn, and having duly heard and read the proofs and allegations of the Parties with respect to Claimant's Emergency Motion for Partial Summary Judgment, do hereby, FIND, as follows:

**FINDINGS**

1.      Claimant has submitted an Emergency Motion for Partial Summary Judgment with respect to six allegedly unpaid invoices.

2.      At oral argument in connection with Motion and again in subsequent correspondence, Claimant withdrew that part of the Motion dealing with portions of the invoices allegedly attributable to workers compensation, overhead and profit.

3.      To the extent not withdrawn, Claimant's Motion is granted in part and denied in part.

4.      Claimant's Motion is granted with respect to the portions of the invoices attributable to employee wages in the amount of $693,514.65 and FICA taxes in the amount of $53,053.87, plus interest thereon at the rate of 2% per month.

5.      Claimant's Motion is denied with respect to alleged unemployment tax cost because Claimant's submissions have not met the applicable standard for granting summary judgment in its favor on this issue.

**INTERIM AWARD**

Accordingly, I do hereby issue an INTERIM AWARD as follows:

1.      Respondent shall pay to Claimant the sum of Eight Hundred Seventy-Two Thousand Seven Hundred Five Dollars and Eight Cents ($872,705.08), consisting of (a) employee wages in the amount of $693,514.65, (b) FICA taxes in the amount of $53,053.87, plus (c) accrued and unpaid interest calculated thereon through August 7, 2009 in the amount of $126,136.56.

2.      Respondent shall pay additional interest to Claimant on the portion of the unpaid balance attributable to employee wages and FICA taxes from August 7, 2009 until paid in full, at the simple rate of two per cent (2%) per month.

Page 1 of 2

# Exhibit A

3.      The Arbitrator retains jurisdiction of this matter after the issuance of this Interim Award to render an Award with respect to other claims and counterclaims raised by the parties in this arbitration which have not been resolved by this Interim Award.

This Interim Award shall remain in full force and effect until such time as a Final Award is rendered.

_8/12/09_
Date

_Hy. T. Mondoil_
Harry T. Mondoil

I, Harry T. Mondoil, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Interim Award.

_8/12/09_
Date

_Hy. T. Mondoil_
Harry T. Mondoil

Page 2 of 2



~~DRAFT~~
~~3/12/07~~

## STAFFING VENDOR AGREEMENT

THIS AGREEMENT is entered into by and between On time Staffing, LLC, located at _5239 Rt 70 Pennsauken NJ_ ("On time Staffing"), and Coast to Coast Installations, located at _250 Moonachie Rd Moonachie NJ 07074_ ("Coast to Coast").

WHEREAS, On time Staffing is engaged in the business of assigning its employees to perform services for Coast to Coast on temporary, temp to permanent and direct hire bases and providing related management and human resource services; and

WHEREAS, Coast to Coast desires to engage On time Staffing to provide such services and to coordinate the provision of such services by subcontractors of On time Staffing ("subcontractors") as may be necessary to meet Coast to Coast's staffing needs;

NOW, THEREFORE, in consideration of the promises, and of the mutual covenants hereinafter set forth, and intending to be legally bound hereby, the parties hereto agree as follows:

## DEFINITIONS

1.    For purposes of this Agreement, "Coast to Coast" refers to and includes the entity named above and This includes Coast to Coast's facilities located at: 250 Moonachie Road, Moonachie, NJ 07074.

2.    For purposes of this Agreement, "On time Staffing" refers to and means On time Staffing, LLC and its parents, subsidiaries, affiliates, and successors.

## DUTIES OF On time Staffing

3.    _Exclusive Vendor._ On time Staffing shall provide to Coast to Coast the services of its employees or of On time Staffing's subcontractors' employees ("Assigned Employees") as requested by Coast to Coast. Except as provided under paragraph 9, Coast to Coast shall use the services of On time Staffing as the exclusive vendor provider of Assigned Employees for the job titles set forth in Exhibit A. In addition to the job titles set forth in Exhibit A, On time Staffing may in conjunction with other staffing firms provide Direct Hire Placements as set forth in Exhibit A. On time Staffing shall manage the provision of services to Coast to Coast by On time Staffing and its subcontractors in accordance with the provisions of this Agreement. This agreement does not apply to On time Staffing providing the exclusive staffing for Coast to Coast's officers, managers, supervisors or office personnel.

4.    _Right of Control Over Assigned Employees._ On time Staffing reserves a right of direction and control over each Assigned Employee providing services to Coast to Coast. On time Staffing shall retain the authority to: (i) hire; (ii) terminate; (iii) discipline; and (iv) reassign any Assigned Employee.

Staffing Vendor Agreement               Page 1 of 1919               Coast to Coast 03/ /07

894003.02

# Exhibit B



Notwithstanding the foregoing, Coast to Coast shall retain sufficient direction and control over each Assigned Employee as is necessary to conduct its business and without which it would be unable to conduct its business, discharge any fiduciary responsibility that it may have, or comply with any applicable licensure, regulatory or statutory requirement.

5.    Responsibilities of On time Staffing. On time Staffing agrees to assume responsibility for the payment of wages to each Assigned Employee; the payment, withholding, and transmittal of payroll taxes for each Assigned Employee; the payment of unemployment contributions with respect to Assigned Employees; and the handling of unemployment claims and workers' compensation claims· involving Assigned Employees with respect to compensation that On time Staffing has agreed to pay; comply with any and all labor laws within each jurisdiction. On time Staffing is also responsible, upon reasonable notice and On time Staffing's approval to obtain workmen's compensation in each jurisdiction in which assigned employees are working. On time Staffing further agrees to require by written contract that its subcontractors agree to comply with the responsibilities and obligations of this paragraph 5 with respect to all Assigned Employees provided by such subcontractors.

6.    Coast to Coast Executive. On time Staffing shall designate and provide at no charge to Coast to Coast an On time Staffing official to serve as liaison with Coast to Coast in overseeing the implementation of this Agreement.

7.    Reports. On time Staffing shall produce such reports as Coast to Coast may reasonably request pertaining to Assigned Employees. The reports shall be in such formats and at such intervals as Coast to Coast may reasonably request. In addition to all other reports, On time Staffing shall provide a quarterly accounting including reports of Workmens Compensation claims open and closed. Coast to Coast shall retain the right to detailed financial information only regarding such claims.

8.    Coordinated Billing. On time Staffing shall· coordinate all billing from and payments to any subcontractors. Coast to Coast shall receive one invoice for each period in which services are provided.

9.    Subcontractors. On time Staffing and Coast to Coast will evaluate Coast to Coast's staffing needs and On time Staffing's ability to meet those needs. If On time Staffing and Coast to Coast determine that additional sources of Assigned Employees are needed, then On time Staffing shall identify, screen, and select appropriate subcontractor(s) to provide such Assigned Employees. Such subcontractor(s) shall execute an agreement to be negotiated between On time Staffing and the subcontractor prior to providing any Assigned Employees to Coast to Coast. Coast to Coast shall have the right to agree on the subcontractors rate for services prior to On time Staffing appointing an subcontractor's associate. On time Staffing shall charge Coast to Coast a 2% processing fee on the billing from such subcontractors. The payroll from subcontracted employees shall not be included in the minimum payroll requirements as per appendix A.

10.    Insurance.

    a.    On time Staffing and its subcontractors shall provide workers' compensation insurance coverage for Assigned Employees in a coverage amount equal to or exceeding any amount required by applicable law. The parties agree to immediately notify each other of any injury or accidents or any claim for workers' compensation benefits involving Assigned Employees assigned to Coast to Coast's facility.



b.   On time Staffing and its subcontractors shall maintain general liability insurance in a minimum coverage amount of $1,000,000. and an umbrella in a minimum coverage amount of 3,000,000.) This coverage shall be secondary to the coverage maintained by Coast to Coast under paragraph 15.

## DUTIES OF Coast to Coast

11.   <u>Payment for Services.</u>

a.   On time Staffing will invoice Coast to Coast for services provided in accordance with this Agreement on a weekly basis. Invoices will be dated on Mondays following the week services were provided. Invoices shall be accompanied by the pertinent timesheets. Coast to Coast's signature or an authorized email of On time Staffing's or its subcontractor's timesheets certifies that the hours shown are correct, that the work was performed to Coast to Coast's satisfaction, and that On time Staffing is authorized to bill Coast to Coast for the hours worked by the named Assigned Employee.

b.   Payment from Coast to Coast shall be due 45 days from the date of On time Staffing's invoice. Coast to Coast hereby authorizes On time Staffing to debit from a bank account designated by Coast to Coast (the "Account"), via Automated Clearing House ("ACH") payment to On time Staffing, all invoiced, unpaid amounts due to On time Staffing. Coast to Coast expressly authorizes On time Staffing to debit any such amounts from the Account on the date that is 45 days from the date of On time Staffing's invoice, without further notice to Coast to Coast. Prior to the providing of any services under this Agreement, Coast to Coast shall provide On time Staffing with the account number, routing number and any other information or documentation concerning the Account required by On time Staffing or the financial institution with which the Account is maintained to authorize On time Staffing to initiate such ACH debit payments from the Account. Failure by Coast to Coast to fully fund the above account to completely cover the weekly ACH Debit for all invoices due on the date of the ACH would be considered a breach of this agreement.

c.   On time Staffing's bill rates by job category are attached hereto as Exhibit A, which is incorporated by reference herein. In the event a portion of any invoice is disputed, the undisputed portion shall be paid in accordance with this paragraph 11.

d.   Coast to Coast acknowledges and agrees that in the event an Assigned Employee works an amount of time for Coast to Coast in any work week that would entitle the Assigned Employee to overtime under applicable state law, Coast to Coast agrees to an increase in the bill rate to reflect such additional overtime compensation plus applicable markup. The applicable mark up by state is as per Exhibit A.

e.   Coast to Coast agrees to pay late charges on any balance remaining unpaid more than 45 days from the date of On time Staffing's invoice at the rate of 2% per month (Annual Percentage Rate of 24%) or the maximum legal rate whichever is higher.

12.   <u>Government Contract.</u> Coast to Coast agrees to notify On time Staffing immediately whenever any Assigned Employee performs any work under a government contract, and agrees to pay to On time Staffing a price differential at its then current rates to reflect the higher wages that may be due any such Assigned Employee by reason of any government contract law or contract specifications.

Staffing Vendor Agreement                    Page 3 of 1919                    Coast to Coast 03/ /07



13.   No Staff Hires. ~~[text redacted]~~

14.   Limitations.

a.      Coast to Coast agrees that it will not entrust Assigned Employees with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without the express prior written permission of On time Staffing and/or its subcontractor, and then only under On time Staffing's or its subcontractor's direct supervision and control.

b.      Coast to Coast will not request or permit any Assigned Employee to use any vehicle, regardless of ownership, in connection with the performance of services for Coast to Coast.

c.      Coast to Coast agrees to include Assigned Employees in any safety program and hazardous communication training program it provides for its employees and to cover the cost of any safety or personal protective equipment, special badges, location specific garments or uniforms for Assigned Employees.  Coast to Coast agrees to allow On time Staffing or its designated agent(s) to conduct, at its discretion, safety inspections of Coast to Coast's site and facilities.

d.      Coast to Coast acknowledges and agrees that it will be responsible for any payments to or on behalf of any Assigned Employee making a claim for workers' compensation benefits in connection with his or her assignment to Coast to Coast, if such payment is in excess of the benefits regularly provided by the workers' compensation law and pursuant to the workers' compensation coverage maintained by On time Staffing, and if such excess payments are required to be made due to Coast to Coast's: (i) willful misconduct; (ii) knowing directions or order to an Assigned Employee in violation of applicable law; (iii) failure to comply with an applicable health or safety law or regulation; or (iv) coercion, discrimination or other action against any Assigned Employee in violation of the workers' compensation law.

e.      Assigned Employees shall not be entitled to, eligible for or receive any benefit or participate in any benefit program provided, established or maintained by Coast to Coast for the benefit of its employees who are not Assigned Employees, including but not limited to life, health and disability insurance, pension, 401(k) or other retirement plans, paid holiday or vacation time, or any other employee benefit or fringe benefit plan or program that Coast to Coast may, from time to time, establish and maintain for the benefit of its employees who are not Assigned Employees. On time Staffing shall require all Assigned Employees to sign an agreement, in the form annexed hereto as Exhibit B, acknowledging that they are not entitled to benefits offered by Coast to Coast to its employees who are not Assigned Employees and waiving any right that may be deemed to exist or that may come into existence with respect to such benefits.

Staffing Vendor Agreement                    Page 4 of 1919                    Coast to Coast 03/ /07

894003.02



15.   _Insurance._

    a.    Coast to Coast shall maintain automobile liability insurance in a minimum coverage amount of $1,000,000.

    b.    Coast to Coast shall maintain general liability insurance in a minimum coverage amount of $3,000,000.

    c.    Coast to Coast shall maintain excess umbrella insurance in a minimum coverage amount of $1,000,000

    d.    Except as otherwise provided herein, to the extent that On time Staffing maintains insurance covering any risks, damages, claims, liabilities and/or expenses arising out of Coast to Coast's obligations under this Agreement, the insurance coverage maintained by Coast to Coast under this paragraph shall be the primary coverage with respect such risks, damages, claims, liabilities and expenses.

## GUARANTEE OF RATES

16.   On time Staffing guarantees the bill rates as set forth in Exhibit A through the date that is one year from the effective date of this Agreement, unless there is an increase in payroll tax, minimum wage or workers' compensation rates.

## INDEPENDENT CONTRACTOR

17.   On time Staffing and its subcontractors shall render services under this Agreement as independent contractors with respect to each other and to Coast to Coast. Nothing contained in this Agreement shall be construed to create the relationship of principal and agent, or employer and employee, between On time Staffing and Coast to Coast, On time Staffing and any of its subcontractors, or any of On time Staffing's subcontractors and Coast to Coast.

## OSHA COMPLIANCE

18.   Because Coast to Coast controls the facilities in which Assigned Employees work, it is agreed that Coast to Coast is primarily responsible for compliance with the Occupational Safety and Health Act and comparable state laws and regulations thereunder, to the extent those laws apply to Assigned Employees assigned to Coast to Coast's facilities, except as may be otherwise agreed in writing signed by the parties hereto. Any such agreement shall be included as an addendum to this Agreement.

## EEO COMPLIANCE

19.   Coast to Coast and On time Staffing affirm and agree that they are equal employment opportunity employers and are in full compliance with any and all applicable anti-discrimination laws, rules, and regulations.   Coast to Coast and On time Staffing agree not to harass, discriminate against, or retaliate



against any employee of the other because of his or her race, national origin, age, sex, religion, disability, marital status, or other category protected by law; nor shall either party cause or request the other party to engage in such discrimination, harassment, or retaliation.  In the event of any complaint of unlawful discrimination, harassment, or retaliation by any Assigned Employee, Coast to Coast and On time Staffing agree to cooperate in the prompt investigation and resolution of such complaint.

## FMLA COMPLIANCE

20.     Coast to Coast and On time Staffing agree that for purposes of all statutory and regulatory requirements for employee leaves of absence, including the Family and Medical Leave Act and any similar state or local law, Coast to Coast and On time Staffing shall cooperate in compliance with any such requirements.

## RIGHT TO AUDIT AND CONFIRM COMPLIANCE

21.     Upon reasonable written notice to On time Staffing, Coast to Coast may inspect On time Staffing's records to verify On time Staffing's compliance with this Agreement.



## CONFIDENTIALITY

22.   Coast to Coast's Confidential Information.  On time Staffing acknowledges that it or its Assigned Employees may be given access to or acquire information which is proprietary to or confidential to Coast to Coast and/or its affiliated companies and their customers, including but not necessarily limited to "Coast to Coast's Confidential Information".  Any and all such information obtained by On time Staffing shall be deemed to be confidential and proprietary information.  On time Staffing agrees to hold Coast to Coast's Confidential Information in strict confidence and not to disclose such information to third parties or to use such information for any purposes whatsoever, except that On time Staffing may: (i) disclose and/or use such information to the extent authorized by Coast to Coast, or as required by law or a court of competent jurisdiction, or to enforce or comply with the terms of this Agreement; and (ii) disclose such information to such Assigned Employees as may be necessary to provide services to Coast to Coast or otherwise implement the terms of the Agreement.  On time Staffing agrees to direct Assigned Employees to keep Coast to Coast's Confidential Information confidential, and to require Assigned Employees to enter into a Confidentiality Agreement in the form annexed hereto as Exhibit C before being assigned to Coast to Coast.

23.   On time Staffing's Confidential Information.  Coast to Coast acknowledges that during On time Staffing's performance under this Agreement, Coast to Coast may be given access to or acquire "On time Staffing's Confidential Information" (as defined below), all of which provides On time Staffing with a competitive advantage and none of which would otherwise be readily available to Coast to Coast.  Coast to Coast agrees that during the term of this Agreement and any time thereafter it will not use or disclose to any person or company (except under the authority of On time Staffing or if ordered to do so by a court of competent jurisdiction) any Confidential Information obtained during the term of this Agreement for any reason or purpose.  Coast to Coast also agrees that it will use due care and diligence to prevent any unauthorized use or disclosure of such information.  As used herein, "On time Staffing's Confidential Information" means: all information regarding On time Staffing's employees, including Assigned Employees, including but not limited to their names, home addresses, telephone numbers, skills, qualifications, evaluations, availability, record of assignments, and related information.

## ASSIGNMENT OF COPYRIGHTS AND PATENTS TO Coast to Coast

24.   Any and all discoveries and/or inventions (which shall include improvements and modifications) relating to work performed by Assigned Employees, or relating to matters disclosed to Assigned Employees in connection with work to be performed, or suggested by such matters, whether or not patentable, which discoveries and/or inventions are made or conceived by Assigned Employees, solely or jointly with others, during the term of any assignment (regardless of whether conceived or developed during working hours) or during a period of one (1) year thereafter, shall be the property of Coast to Coast as "work made for hire" to the extent provided by sections 101 and 201(b) of the Copyright Act, 17 U.S.C. 101 et seq., and such discoveries and/or inventions shall be promptly disclosed to Coast to Coast.  Coast to Coast shall have the right to file and prosecute, at its own expense, all patent applications, whether U.S. or foreign, on said discoveries and/or inventions.  Assigned Employees shall, during any assignment with Coast to Coast or any time thereafter, provide to Coast to Coast all documents, information, and assistance requested for the filing or prosecution of any such patent application, for the preparation, prosecution, or defense of any legal action or application pertaining to such discoveries and/or inventions and for the assignment or conveyance to Coast to Coast of all right, title, and interest in and to such discoveries and/or inventions, patent applications, and letters patent issuing thereon.



## COOPERATION

25.    The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings which may be brought by or involve any of the Assigned Employees.

## TERM AND TERMINATION

26.    a.    This Agreement shall be for an initial term of one (1) year from the effective date of this Agreement, determined by the later date of signature of the parties. Each party shall sign a yearly renewal within 45 days of the end of the year term. Both parties acknowledge that this agreement is in effect for a minimum of one year.

       b.    This Agreement may be terminated by On time Staffing upon 30 days' written notice to Coast to Coast. Coast to Coast shall have no right to terminate this Agreement during the initial one-year term

       c.    Notwithstanding any other provision of this Agreement, in the event that either party declares or becomes bankrupt or insolvent, dissolves or discontinues operations, or fails to make any payments within the time periods specified in this Agreement, either party may terminate this Agreement upon 24 hours' written notice to the other party.

## MISCELLANEOUS

27.    Notice.  Any written notice required to be provided to either party under this Agreement shall be personally delivered or sent by recognized overnight courier or by certified mail, return receipt requested, and shall be effective when received as follows:

       As to On time Staffing:

                 Name *Brian Kane*
                 Title *V.P.*
                 Address *5239 Rt 70   Pennsauken NJ 08169*

       With a copy to:

       As to Coast to Coast:

                 Name *Mike Kane*
                 Title *Pres.*
                 Address *250 Moonachie Rd. Moonachie NJ 07074*

       With a copy to:



Either party may designate a different address to which, or person to whom, notices should be sent at any time by notifying the other party in writing in accordance with this Agreement.

28.    Survival of Certain Provisions.  Those provisions of this Agreement which by their terms extend beyond the termination or non-renewal of this Agreement shall remain in full force and effect and survive such termination or non-renewal.

29.    Amendments.  No provision of this Agreement may be amended or waived unless such amendment or waiver is agreed to in writing signed by the parties.

30.    Severability.  Each provision of this Agreement shall be considered severable such that if any one provision or clause conflicts with existing or future applicable law, or may not be given full effect because of such law, this shall not affect any other provision which can be given effect without the conflicting provision or clause.

31.    Complete Agreement.  This Agreement, the exhibits attached hereto, and the provisions on the On time Staffing Timesheet Agreement, contain the entire understanding between the parties hereto, and supersede all prior agreements and understandings relating to the subject matter hereof.

32.    Successors and Assigns.  The provisions of this Agreement shall inure to the benefit of and be binding upon the parties and their respective representatives, successors, and assigns.

33.    Headings.  The headings of the paragraphs of this Agreement are inserted solely for the convenience of reference.  They shall in no way define, limit, extend, or aid in the construction of the scope, extent, or intent of this Agreement.

34.    Waiver.  The failure of a party to enforce the provisions of this Agreement shall not be construed as a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

35.    Transferability.  Coast to Coast shall not transfer or assign this Agreement without the written consent of On time Staffing.

36.    Ambiguities.  The rule of construction that ambiguities in an agreement are to be construed against the drafter shall not be invoked or applied in any dispute regarding the meaning or interpretation of any provision of this Agreement.

37.    Counterparts.  This Agreement shall constitute one document and as such may be executed in counterparts, all of which taken together shall be deemed to be and shall constitute one Agreement, binding upon the parties hereto.

**REMEDIES**

38.    Arbitration.

        a.    · Any controversy or dispute between the parties, whether arising out of or in connection with this Agreement or otherwise, shall be resolved in an arbitration under the Federal Arbitration Act

Staffing Vendor Agreement                 Page 9 of 19~~19~~                 Coast to Coast 03/ /07  |

894003.02



and before the American Arbitration Association ("AAA") in accordance with AAA's then obtaining Commercial Arbitration Rules at the AAA location closest to On time Staffing's office. The administrative cost of the arbitration and the arbitrator's fee shall be shared equally by the parties.

    b.    In such arbitration, the arbitrator shall have no authority or power to amend, modify, or in any other way change any of the terms of this Agreement. All decisions of such arbitrator shall be final and binding upon both parties. The prevailing party in such Arbitration as determined by the arbitrator in his or her decision shall be awarded an amount equal to its reasonable attorneys' fees incurred in connection with such arbitration, in addition to what other relief may be awarded.

    c.    Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

39.    <u>Indemnifications.</u>

    a.    To the extent permitted by law, and except for claims, losses, and liabilities expressly disclaimed by On time Staffing in paragraph 40 below, On time Staffing agrees to defend, indemnify, and hold Coast to Coast harmless of and from any and all claims or losses that Coast to Coast actually incurs (including reasonable attorneys' fees) proximately caused by the fault, negligence, gross negligence, or recklessness of On time Staffing, or On time Staffing's officers, employees or authorized agents, or which arise from On time Staffing's breach of this Agreement.

    b.    Although On Times Staffing's workmen's compensation is "sole remedy" for an employees work related injury, To the extent permitted by law, Coast to Coast agrees to defend, indemnify, and hold On time Staffing harmless against any and all claims, losses, and liabilities that On time Staffing incurs (including reasonable attorneys' fees) that are proximately caused by the fault, negligence, gross negligence, or recklessness of Coast to Coast or Coast to Coast's officers, employees, or authorized agents; that arise out of or from Coast to Coast's obligations under or breach of this Agreement, that arise from risks inherent in Coast to Coast's business, or that are expressly disclaimed by On time Staffing in paragraph 40.

    c.    In the event that Coast to Coast and On time Staffing are adjudged to be both partially at fault in any proceeding giving rise to an award of actual damages by a third party against both of them, Coast to Coast and On time Staffing agree to bear responsibility for the resulting damages equal to their respective proportionate share of fault. The proportionate sharing of liability among the parties provided for in this subparagraph c. shall not apply to any claim or liability against which On time Staffing is entitled to be indemnified and held harmless under subparagraph d. below.

    d.    To the extent permitted by law, Coast to Coast agrees to defend, indemnify, and hold On time Staffing harmless against any and all claims, losses, and liabilities that On time Staffing incurs (including reasonable attorneys' fees) which arise as a result of or in connection with any acts or omissions of an Assigned Employee occurring outside of the job site to which such Assigned Employee is assigned to provide services to Coast to Coast pursuant to this Agreement, including but not necessarily limited to any and all workers' compensation or other claims by or on behalf of any Assigned Employee

Staffing Vendor Agreement        Page 10 of 1919        Coast to Coast 03/ /07  |



or other person or entity. The indemnification provisions of this subparagraph d. shall apply to any such claim, loss or liability incurred by On time Staffing, notwithstanding any provision of subparagraphs a. or b. above to the contrary.

e.     As a condition precedent to indemnification hereunder, the parties each agree to inform the other within 24 hours of its receipt of any claim, demand, or notice for which indemnification hereunder may be sought, and to cooperate in the investigation and defense of any such claim, demand, or notice.

f.     The parties agree that this paragraph 39 is the complete agreement between them with respect to any possible indemnification claim arising under this Agreement, and waive their right to assert any common law indemnification or contribution claim against the other.

40.    Disclaimer of On time Staffing Liability.   Other than its statutory obligation to provide Workmen's Compensation coverage to it's employee's, On time Staffing expressly disclaims liability for any claim, loss, or liability of any kind whatsoever resulting from:

a.     Coast to Coast's failure to supervise, control, or safeguard premises, processes, or systems; or, without On time Staffing's express prior written approval, entrusting Assigned Employees with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables.

b.     Coast to Coast requesting or permitting Assigned Employees to use any vehicle, regardless of ownership, in connection with the performance of services for Coast to Coast unless On time Staffing has given its express prior approval in writing.

c.     Coast to Coast's failure to include any Assigned Employee in any safety program or hazardous communication training program it provides for its employees, failure to provide or cover the cost of any safety or personal protective equipment, special badges, location specific garments or uniforms for Assigned Employees, or failure to allow On time Staffing or its designated agent(s) to conduct, at its discretion, safety inspections of Coast to Coast's site and facilities.

d.     Coast to Coast's (i) willful misconduct; (ii) knowing directions or order to an Assigned Employee in violation of applicable law; (iii) failure to comply with an applicable health or safety law or regulation; or (iv) coercion, discrimination or other action against any Assigned Employee in violation of the workers' compensation law, to the extent any such acts or omissions by Coast to Coast result in any payment to or on behalf of any Assigned Employee making a claim for workers' compensation benefits in connection with his or her assignment to Coast to Coast in excess of the benefits regularly provided by the workers' compensation law and/or pursuant to the workers' compensation coverage maintained by On time Staffing.

e.     Claims by Assigned Employees for benefits, damages, contributions, or penalties under any employee benefit plan, fringe benefit plan, or personnel policy sponsored and maintained by Coast to Coast, whether or not Coast to Coast's plans exclude Assigned Employees from coverage.

f.     Promises of increased compensation made by Coast to Coast to Assigned Employees.

g.     Claims by any person relating to any Coast to Coast product or service.



h.      Coast to Coast's making substantial changes in the Assigned Employee's job duties or risks without On time Staffing's prior written approval.

i.      Claims by any person based on allegations that Coast to Coast's business activities damaged the environment.

j.      The conduct of Coast to Coast's officers, employees, and agents.

k.      Failure by Coast to Coast to provide Assigned Employees with a safe worksite or to provide information, training, and safety equipment with respect to any hazardous substances or conditions to which they may be exposed at the worksite, whether or not required by law.

l.      Acts or omissions of any Assigned Employee in the furtherance of Coast to Coast's particular business, except for those that could occur on any assignment without regard to Coast to Coast's particular business, and except to the extent that such claim, loss, or liability is caused by On time Staffing's failure to properly perform its screening, selection, assignment, or other contractual duties with respect to the Assigned Employee.

m.      Acts, omissions or risks for which Coast to Coast has the primary insurance obligation under paragraph 15.

n.      Claims for special, indirect, consequential, punitive, or lost profit damages.

o.      To the extent permitted by law, Coast to Coast agrees to defend, indemnify, and hold On time Staffing harmless against any and all claims, losses, and liabilities that On time Staffing incurs (including reasonable attorneys' fees) that are proximately caused outside of the work site or outside of the scope of the On time employees work responsibilities. Expressly Including by not limited to, claims, losses and liabilities incurred during transportation and lodging.

41  Coast to Coast shall be considered to be in breach of its obligations under this agreement if Coast to Coast's actions or omissions hinder, obstruct or otherwise impede On Time Staffing's ability to effectively manage the workers' compensation program contemplated under this agreement. Such actions and omissions include, but are not limited to, the following:

a.      Failure to notify On Time Staffing in a timely manner of new or relocated job site locations;

b.      Failure to notify On Time Staffing in a timely manner of new or revised job descriptions for On Time Staffing employees

c.      Moving On Time Staffing employees into new job classifications without prior written notice of the change and written approval of On Time Staffing;

d.      Failure to report employee injuries, actual or claimed, in a timely manner to Oir Time Staffing;

e.      Failure to cooperate with On Time Staffing in its investigation of reported employee injuries;

f.      Failure to procure and produce documentation to On Time Staffing regarding reported employee injuries;

g.      Failure to implement On Time Staffing's protocol for the handling of workers' compensation claims, including but not limited to proper posting of a panel of approved



healthcare providers, proper posting of documentation regarding employees' rights and
duties; and implementation of a light-duty return to work program for injured employees

h.  Failure to timely identify and cure unsafe working conditions

i.   Failure to comply with all applicable state and federal occupational health and safety
regulations or, upon notification by OSHA or any other state or federal regulatory agency
of job site violations, failure to cure such violations prior to reintroducing On Time
Staffing employees into the affected job environment

j.   Such other acts or omissions that would preclude On Time Staffing from assuring the
health, safety and welfare of its employees.

42.   <u>Choice of Law</u>.  This agreement shall be governed by and construed in accordance with the laws
of the State of New Jersey, without reference to any conflicts of law principles thereof.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.]



IN WITNESS WHEREOF, this Agreement has been duly executed by On time Staffing and Coast to Coast on the dates set forth below.

Coast to Coast Installations

_____
Signature

MICHAEL KARO
Printed Name

4/3/07
Date

On time Staffing, LLC

_____
Signature

Briane Kares
Printed Name

V.P.
Title

4/4/07
Date



## EXHIBIT A

On time Staffing preferred rate schedule: Guaranteed through the date that is one year from the effective date of this Agreement

1.   **Assigned Employee Bill Rates**

| Assigned Employee Mark up on Employee Pay Rate | | |
| --- | --- | --- |
| Job Title and example | Workers' Comp Code | Regular Time Mark up |
| Rack Installation Worker | | 27.5% |
| *overtime is calculated as 150% markup on regular time rate bill rate unless the state in which the work being done does not require WC burden to be charged on the overtime portion of the payroll (Example: New Jersey) | | |

2.   **Fees and Fee Credit for Services.**

   a.   Coast to Coast shall pay to On time Staffing, in accordance with the terms of this Agreement, an amount equal to 127.5% of the total pay rate initially billed by On time Staffing of providing Assigned Employees to perform the services contracted for hereunder, which amount shall include the payroll based taxes and direct payroll based expenses (hereinafter referred to as "Expenses") initially billed by On time Staffing in providing such Assigned Employees.

   b.   If the actual Expenses incurred by On time Staffing in providing Assigned Employees pursuant to this Agreement are less than the Expenses initially billed by On time Staffing, Coast to Coast shall be entitled to a credit to be applied against any fees payable by it under this Agreement in an amount equal to 75% of the amount by which the Expenses initially billed exceed On time Staffing's actual Expenses, but in no event shall the credit exceed 4.35% of the total cost initially billed by On time Staffing for providing such Assigned Employees under this Agreement. Such credit, if any, shall be calculated by On time Staffing on an annual basis at the conclusion of the initial one-year term of this Agreement and thereafter at the conclusion of each successive one-year renewal term, if any, and shall due and payable to Coast to Coast upon the processing of subsequent credits, if any, On time Staffing may receive from its vendors and the completion of all relevant cost calculations.

   c.   If the actual Expenses incurred by On time Staffing in providing Assigned Employees pursuant to the terms of this Agreement are greater than the Expenses initially billed by On time Staffing under this Agreement, Coast to Coast shall pay to On time Staffing 100% of the amount by which such actual Expenses

*Incentive for CTC to operate safely* (handwritten)

Staffing Vendor Agreement                Page 15 of 19                Coast to Coast 03/ /07

894003.02



exceed the Expenses initially billed. Such additional payment amount from Coast to Coast, if any, shall be calculated by On time Staffing within 30 days of the conclusion of each quarter-annual period during the initial one-year term of this Agreement and any successive one-year renewal term, and shall be due from Coast to Coast 15 days from the date of On time Staffing's invoice for such amount. Coast to Coast hereby authorizes On time Staffing to debit from the Account via ACH payment to On time Staffing any amounts due under this paragraph on the date that is 15 days from the date of On time Staffing's invoice, in accordance with the terms and provisions of paragraph 11 of this Agreement.

d.  Minimum Performance Volume:  It is understood by both parties that On time Staffing's expected financial benefit from this agreement would be achieved only if Coast to Coast maintains a minimum number of On time Staffing associates. If On time Staffing does not achieve a minimum payroll to it's associates (provided to Coast to Coast) of $7,000,000 there shall be an adjustment made in fees or retro adjustment (as pe appendix A) to Coast to Coast to compensate for under performance.

e.  As an example of Assigned Employee Bill Rates, the following schedule reflects the calculated billing rates in each State based upon Workers Compensation laws in each State:

| | | Pay rate Example | Reg Bill Rate | OT Bill Rate Including WC on OT | OT Bill Rate Not Including WC | |
|---|---|---|---|---|---|---|
| ALABAMA | AL | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| ALASKA | AK | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| ARIZONA | AZ | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| ARKANSAS | AR | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| CALIFORNIA | CA | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| COLORADO | CO | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| CONNECTICUT | CT | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| DELAWARE | DE | $ 8.00 | $ 10.20 | $ 15.30 | $ 14.89 | |
| DISTRICT OF COLUMBIA | DC | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| FLORIDA | FL | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| GEORGIA | GA | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| HAWAII | HI | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| IDAHO | ID | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| ILLINOIS | IL | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| INDIANA | IN | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| IOWA | IA | $ 8.00 | $ 10.20 | NA | $ 14.89 | |

Staffing Vendor Agreement                    Page 16 of 19 19                    Coast to Coast 03/ /07

894003.02

on time staffing

| | | | | | | |
|---|---|---|---|---|---|---|
| KANSAS | KS | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| KENTUCKY | KY | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| LOUISIANA | LA | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MAINE | ME | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MARYLAND | MD | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MASSACHUSETTS | MA | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MICHIGAN | MI | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MINNESOTA | MN | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MISSISSIPPI | MS | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MISSOURI | MO | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| MONTANA | MT | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NEBRASKA | NE | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NEVADA | NV | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NEW HAMPSHIRE | NH | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NEW JERSEY | NJ | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NEW MEXICO | NM | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NEW YORK | NY | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| NORTH CAROLINA | NC | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| | | | | | | TBD |
| | | | | | | TBD |
| OKLAHOMA | OK | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| OREGON | OR | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| PENNSYLVANIA | PA | $ 8.00 | $ 10.20 | $ 15.30 | NA | |
| RHODE ISLAND | RI | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| SOUTH CAROLINA | SC | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| SOUTH DAKOTA | SD | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| TENNESSEE | TN | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| TEXAS | TX | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| UTAH | UT | $ 8.00 | $ 10.20 | $ 15.30 | NA | |
| VERMONT | VT | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| VIRGINIA | VA | $ 8.00 | $ 10.20 | NA | $ 14.89 | |
| | | | | | | TBD |
| | | | | | | TBD |

Staffing Vendor Agreement          Page 17 of 1919          Coast to Coast 03/ /07

894003.02

**On time staffing**

| WISCONSIN | | WI | $    8.00 | $   10.20 | NA | $   14.89 | |
|---|---|---|---|---|---|---|---|
| | | | | | | | TBD |
| | | | | | | | |
| | WC Charge 100% OT Pay Rate | | | | | | |

3. **Permanent Placement Fees**

   a.  On time Staffing's fees, payable by Coast to Coast, are contingent on the hiring of a candidate referred by On time Staffing. The fees are based upon the agreed annual salary and are as follows:

     1.  15 % Placement Fee

     2.  All fees are payable net ten (10) days from the starting date of employment.

     3.  Part-time employment fees will be calculated based on the equivalent full-time salary multiplied by the percentage of time the employee works.

     4.  On time Staffing reserves the right to include as annual salary any expected bonus, commission or guaranteed increase in salary which is part of the initial employment offer.

     5.  Guarantee. If the full fee is paid within ten (10) calendar days after the starting date of employment, a sixty (60) calendar day unconditional replacement guarantee will be in effect. If the employee's employment terminates for any reason other than reorganization, elimination of position, takeover or material change in job responsibility within the applicable guarantee period, On time Staffing will replace the terminated employee at no additional charge.

     6.  The Placement Fee referenced above applies to candidates referred by On time Staffing for a specified or an alternate position, and employed by Coast to Coast or its affiliate or any other entity as a result of subsequent referrals by Coast to Coast, either as an employee, consultant or independent contractor, within twelve (12) months from the date of On time Staffing's last referral.

     7.  The hiring company is responsible for checking references and confirming the accuracy of the candidate's resumes. Any reference checks performed by On time Staffing only provide answers to specified questions asked and are not intended to be an exhaustive check of employment, education and other background information.

     8.  All referrals are made in confidence. Acceptance of On time Staffing's referral constitutes acceptance of the terms of this fee schedule.

894003.02



Addendum to Agreement

This Addendum ("Addendum") amends and is hereby incorporated into the existing Agreement ("Agreement"), entered into by and between On Time Staffing, LLC and Coast to Coast Installations as of April 4th, 2007.

This Addendum shall take effect immediately as follows:

BETWEEN:

On Time Staffing, LLC

And

Coast to Coast Installations

Background:

    A. On Time Staffing, LLC and Coast to Coast Installations (the "Parties) entered into the Contract (the "Contract") dated April 4th, 2007, for the purpose of a staffing partnership.
    B. The Parties desire to amend the Contract on the terms and conditions set forth in this Addendum to the Agreement (the "Agreement").
    C. This Agreement is the first amendment to the Contract.

In consideration of the Parties agreeing to amend their obligations in the existing Contract, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, both Parties agree to keep, perform and fulfill the promises, conditions of the original Contract with the addition of the below amendment:

Amendments:

    1. Term of the agreement to be extended one year from the date of addendum.
    2. Addition of Safety Program to be implemented and administered by On Time Staffing with the full cooperation and participation of Coast to Coast.
        a. Safety Program Proposal Costing Summary
            i. Total estimated annual cost of Safety Program is $80,000.
                1. Cost of printed material not included

ii. On Time and Coast to Coast will each cover 50% of the annual cost for the safety program.

   1. Coast to Coast's portion of program shall be billed weekly in 52 equal installments of $769.23 commencing April 11th.

      a. Cost of program is an estimate. If On Time Staffing at it's discretion determines additional funding is required to successfully implement the safety program, it will notify Coast to Coast of it's determination and any additional fees associated.

      b. On Time may determine additional funding may be require due to but not limited to increased losses, change in work environment, increase in employee base, increase in required site visits, increase in additional training or any other factors effected the costs of the program.)

      c. If Additional funding is required and Coast to Coast is participating and cooperating in the safety program On Time Staffing will continue it's 50% participation covering the additional funding.

iii. General Program outline (A detailed outline of the safety program has been provided separately.)

      a. Phase I - Process and Development

      b. Phase II - Two eight hour training seminars with all CTC supervisors and managers

      c. Estimated 30 site inspections including coaching and audits

         i. Random site inspections

         ii. Reporting

         iii. Claims management

      d. Management and oversight of risk management program

      e. Quarterly Business Reviews with CTC management

In Witness Whereof, each of the undersigned has caused this Addendum to be duly executed in its name and on its behalf

**COAST TO COAST INSTALLATIONS**

By: _____

Title: _____

Date: _____

**ON TIME STAFFING**

By: _____

Title: _____

Date: _____

    ii.  On Time and Coast to Coast will each cover 50% of the annual cost for the safety program.

        1.  Coast to Coast's portion of program shall be billed weekly in 52 equal installments of $769.23 commencing April 11th.

            a.  Cost of program is an estimate.  If On Time Staffing at it's discretion determines additional funding is required to successfully implement the safety program, it will notify Coast to Coast of it's determination and any additional fees associated.

            b.  On Time may determine additional funding may be require due to but not limited to increased losses, change in work environment, increase in employee base, increase in required site visits, increase in additional training or any other factors effected the costs of the program.)

            c.  If Additional funding is required and Coast to Coast is participating and cooperating in the safety program On Time Staffing will continue it's 50% participation covering the additional funding.

    iii.  General Program outline (A detailed outline of the safety program has been provided separately.)

        a.  Phase I - Process and Development

        b.  Phase II - Two eight hour training seminars with all CTC supervisors and managers

        c.  Estimated 30 site inspections including coaching and audits

            i.  Random site inspections

            ii.  Reporting

            iii.  Claims management

        d.  Management and oversight of risk management program

        e.  Quarterly Business Reviews with CTC management

In Witness Whereof, each of the undersigned has caused this Addendum to be duly executed in its name and on its behalf

COAST TO COAST INSTALLATIONS          ON TIME STAFFING

By: _M/l/l_____          By _____

Title: _President_____          Title: _V.P_____

Date: _4/9/08_____          Date: _4/9/08_____